| | |
|---|---|
| KIM NEWMAN<br>3203 82nd Avenue<br>Landover, Maryland 20785 | *<br>*<br>* IN THE<br><br>CIRCUIT COURT |
| *Plaintiff* | *<br><br>* FOR |
| v. | *<br>*<br>* BALTIMORE CITY<br>CASE NO. 24-C-15004753 |
| MIDLAND FUNDING, LLC<br>C/O Corporation Service Company<br>Ste 400<br>2711 Centerville Rd<br>Wilmington, DE 19808 | *<br>*<br>*<br>* |
| SERVE ON:<br>CSC-Lawyers Incorporating<br>Service Company<br>7 St. Paul Street<br>Suite 820<br>Baltimore, Maryland 21202 | *<br>*<br>*<br>* |
| AND | * |
| MIDLAND CREDIT<br>MANAGEMENT, INC.<br>500 West First<br>Hutchinson, Kansas 67501 | *<br>*<br>* |
| SERVE ON:<br>CSC-Lawyers Incorporating<br>Service Company<br>7 St. Paul Street, Suite 1660<br>Baltimore, Maryland 21202 | *<br>* |
| *Defendants* | * |

## COMPLAINT
## AND
## DEMAND FOR JURY TRIAL

Plaintiff, Kim Newman, by and through her attorneys, Jane Santoni, Kathleen P. Hyland, and Williams & Santoni, LLP, hereby files this Complaint against Midland Funding, LLC and Midland Credit Management, Inc. and states as follows:

## PARTIES

1.      Plaintiff Kim Newman is a consumer who resides at 3203 82nd Avenue, Landover, Maryland 20785-2708.

2.      Defendant Midland Funding, LLC ("Midland Funding") is a Delaware corporation engaged in the business of collecting debts from consumers. Defendant Midland Funding is a "debt collector," as defined by the FDCPA, 15 U.S.C § 1692a(6) and a "collector" as defined by MD. CODE ANN., COM. LAW § 14-201.

3.      Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation engaged in the business of collecting debts from consumers. Defendant MCM is a "debt collector" as defined by the FDCPA, 15 U.S.C § 1692a(6) and a "collector" as defined by MD. CODE ANN., COM. LAW § 14-201.

## JURISDICTION AND VENUE

4.      The Circuit Court has exclusive original subject matter jurisdiction over the claims asserted herein because the Plaintiff seeks in excess of $30,000 in damages and has exercised her rights to a trial by jury.

5. The Circuit Court can exercise personal jurisdiction over the Defendants. Defendants regularly conduct business in Baltimore City, Maryland. The cause of action for this dispute arose in Maryland.

6. This Court has jurisdiction and venue of all causes of actions alleged herein, as the claims for relief accrued in Maryland; Defendants regularly conduct business in Baltimore City.

## FACTUAL ALLEGATIONS

7. The alleged debt subject to this dispute is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, as it arose out of a consumer credit card account.

8. The alleged debt subject to this dispute is a "consumer transaction" as that term is defined by Md. Code Ann., Com. Law, § 14-201(c) of the MCDCA.

9. The Defendants attempted to collect the subject debts by engaging in "communications" as defined in 15 U.S.C. § 1692a(2) of the FDCPA.

10. The Defendants are "debt collectors" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

11. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA.

12. In 2008, Newman had a credit card account with Credit One Bank.

13. On or about October 22, 2008, Newman received a statement showing that she owed a balance of $417.04, with a minimum payment due on November 16, 2008. See **Exhibit 1**, "Credit One Statement – 10/22/2008."

14.     On or about November 5, 2008, Newman sent Credit One a check for the total balance of $417.04 through her credit union, Education Systems Federal Credit Union. *See* **Exhibit 2, "Balance Payoff Check."**

15.     After making the 2008 payment to pay off her credit card, Newman **never** used the Credit One credit card again.

16.     Between 2009 and 2012, Newman received debt collection calls from Credit One alleging that she owed a balance on her credit card. Although Newman explained that she had paid the balance in full, Credit One continued to tell her she owed more money and refused to stop calling her until additional payments were made.

17.     As a direct result of these collection calls, between 2009 and 2012, Newman made additional telephone payments to resolve the apparent discrepancy with her account, and requested that Credit One send her a statement showing that she owed a zero balance. Newman wanted a zero balance statement so that she could close out her account with the confidence that the balance was paid in full.

18.     Between 2009 and 2012, Newman paid $1,449.95 in extra payments to Credit One.

19.     Whenever Newman made these payments, a representative from Credit One assured her that she would receive a zero balance statement.

20.     Credit One never sent Newman a zero balance statement.

21.   On November 28, 2013, Midland Credit Management sent Newman a debt collection letter on the Credit One account, alleging that the "current owner" was Midland Funding and the "current balance" was $792.78. *See* **Exhibit 3, "Midland Debt Collection Letters."**

22.   On September 16, 2014, Midland Funding filed a debt collection lawsuit against Newman to recover an alleged balance of $667.44 on her Credit One Bank credit card account. *See* **Exhibit 4, "Midland Complaint."**

23.   On November 18, 2014, Newman filed a counterclaim against Midland Funding, alleging that she paid off the underlying account.

24.   Newman provided Midland with a copy of the Balance Payoff Check.

25.   On or about November 18, 2014, Newman and counsel for Midland Funding, Scott Whiteman, discussed the case at the District Court for Prince George's County. Whiteman advised Newman that her problem was with the original creditor, Credit One, and not Midland Funding. Whiteman advised Newman to file a lawsuit against Credit One and dismiss her counterclaim.

26.   Upon information and belief, Whiteman's statement was not accurate, as the Midland Funding complaint contained an Affidavit of Records stating that Midland owned "all the rights, title and interest to defendant's Credit One Bank, N.A. account." *See* **Exhibit 4.**

27.   Midland Funding agreed to dismiss the lawsuit in exchange for Newman dismissing her counterclaim.

28.   Newman relied on Midland's word and agreed to dismiss her counterclaim in order to pursue her claim against Credit One.

29.   On or about November 21, 2014, Whiteman entered a stipulated dismissal on the docket on behalf of both Midland Funding and Kim Newman, pursuant to Maryland Rule 3-506(b). *See* **Exhibit 5,** "Maryland Judiciary Case Search Case History."

30.   Between November 2014 and April 2015, Newman went to the Prince George's County District Court and attempted to find out how to bring a claim against Credit One for attempting to collect a debt against her and for taking more money than she believed she owed. The clerks tried to assist her, but the Midland Complaint did not list Credit One as a Plaintiff or owner of the debt.

31.   In April 2014, Newman filed a small claim action against Credit One in the District Court for Prince George's County.

32.   As a result of Newman's lawsuit, Credit One repurchased the debt from Midland Funding. Credit One's buy-back was finalized on May 28, 2015. *See* **Exhibit 6,** "Affidavit of Gary Harwood."

33.   Midland Funding and MCM sold the debt back to Credit One even though the debt was part of the settlement between Newman and Midland, in which both parties agreed to dismiss their lawsuits.

34.   Between 2013 and 2015, Midland Funding and MCM posted a trade line on Newman's credit report, alleging that she owed the debt to Midland Funding.

35.    In 2015, Newman sought employment as a bank teller, and was denied four times because her credit report showed a delinquent debt.

36.    On or about July 8, 2015, "A. Ross," a Division Manager from Midland Funding, sent Newman a letter stating that while her account had been transferred to Credit One, "MCM has since been informed that this account was transferred in error and has been recalled by Credit One." *See* **Exhibit 7, "MCM Account Transfer Error Letter, dated 7/8/2015."**

37.    Midland Funding and MCM attempted to collect a debt from Newman that it now claims it should not have owned.

38.    Midland Funding and MCM knowingly sold Newman's debt back to the original creditor after entering into a settlement agreement to dismiss the debt.

39.    Midland Funding and MCM recklessly failed to verify whether the account they acquired from Credit One was acquired legitimately or in error.

40.    Midland Funding and MCM recklessly failed to verify the legal status of the debt before filing suit against Newman in the Maryland district court.

41.    Midland Funding and MCM recklessly failed to verify whether the information they posted to her credit report was legitimate or in error.

42.    Midland Funding and MCM misrepresented to Newman that the transfer of her account from Credit One was in error.

43.    Midland Funding and MCM sold Newman's debt so that Credit One could file a counterclaim for the same debt.

44.   In September 2015, Newman settled her claims with Credit One.

45.   As a result of the Defendants' actions, Newman has suffered from actual and emotional damages from having to defend herself twice for the same debt, costs of hiring an attorney, damage to credit, stress, depression, inconvenience, loss of sleep, anxiety, and humiliation.

## COUNT ONE
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C.A. § 1692a, *et. seq.*

46.   The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

47.   Pursuant to § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. This prohibition specifically includes the false representation of the character, amount or legal status of any debt.

48.   Pursuant to § 1692e(5), a debt collector may not threaten to take any action that cannot legally be taken.

49.   Pursuant to § 1692k(a)(1) and § 1692k(a)(3), a debt collector in violation of the FDCPA is liable for actual damages, court costs and attorney's fees.

50.   Defendants violated the FDCPA by inducing the Plaintiff to dismiss her counterclaim, and then selling her debt back to the original creditor.

51. Defendants further violated the FDCPA by falsely representing the status of the debt to the original creditor, which caused Plaintiff to be sued again for the same debt.

52. Defendants further violated the FDCPA by misrepresenting the status of the debt to the Plaintiff in the MCM Account Transfer Error Letter.

53. Defendants further violated the FDCPA by misrepresenting the ownership of the accounts in affidavits in the underlying lawsuit.

54. Defendants further violated the FDCPA by reporting information to her credit report.

55. At all times Defendants were acting with knowledge of the foregoing, but proceeded nonetheless.

WHEREFORE Plaintiff Newman demands judgment for actual and statutory damages of SEVENTY-FOUR THOUSAND, NINE HUNDRED NINETY-NINE DOLLARS ($74,999), against Defendants Midland Funding and MCM, jointly and severally, including costs and attorney fees against the Defendants.

## COUNT TWO
### VIOLATIONS OF THE MD. CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201 et. seq.

56. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

57.   Plaintiff incurred a debt, which was primarily for personal, family, or household purposes, and is therefore a "consumer transaction" as that term is defined by the MCDCA.

58.   Defendants have attempted to collect a debt arising from a credit contract and are "collectors" within the meaning of the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law § 14-201 (b).

59.   Pursuant to § 14-202(8), a collector may not claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

60.   Pursuant to § 14-202(3), a collector may not disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false.

61.   Pursuant to § 14-202(6), a collector may not communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor.

62.   Pursuant to § 14-203, a collector in violation of the MCDCA is liable for any damages proximately caused by the violation. This explicitly includes damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

63.   Defendants violated § 14-202(8) by attempting to collect debts that it did not have the legal right to collect.

64. Defendants further violated § 14-202(3) by disclosing information to credit bureaus with knowledge or reckless indifference to the fact that that the information was false.

65. Defendants further violated § 14-202(6) by sending Newman debt collection letters for an invalid debt.

66. The Defendants' illegal actions in collecting this debt caused the Plaintiff to suffer costs, inconvenience, stress, humiliation, and mental anguish.

WHEREFORE, Plaintiff Newman respectfully requests the Court enter judgment in favor of Plaintiff and against Defendants jointly and severally for actual and emotional damages of SEVENTY-FOUR THOUSAND, NINE HUNDRED NINETY-NINE DOLLARS ($74,999), including interest and costs, attorney's fees, and such other relief as the nature of the case may require.

### COUNT THREE
### VIOLATIONS OF THE MD. CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 13-101 et. seq.

67. The Plaintiff incorporates by reference the foregoing allegations of this Complaint.

68. Plaintiff is a "consumer" within the meaning of the Maryland Consumer Protection Act ("MCPA"), Com. Law § 13-101(c).

69. The Defendants are subject to all of the consumer protections mandated by the CPA which, among other things, prohibits unfair or deceptive

11

practices in the extension of consumer credit and in the collection of consumer debts. MCPA, Com. Law §§ 13-303(c) and (d).

70.     By filing the District Court Complaint with a fraudulent affidavit, Defendants have made misleading written statements in violation of the MCPA.

71.     By inducing Newman into a settlement and then selling her debt back to the original creditor, Defendants made deceptive oral and written statements during the collection of the alleged debts, in violation of the MCPA.

72.     The Plaintiff relied on the Defendants' statements in agreeing to a dismissal.

73.     The Plaintiff suffered damages from the Defendants' illegal lawsuit.

74.     The Plaintiff suffered damages from having to defend herself against the same debt twice.

75.     The Plaintiff suffered damages from Defendants' credit reporting practices.

76.     Defendants' actions in violation of the MCDCA also constitute unfair or deceptive trade practices in violation of MCPA § 13-101(14)(iii).

WHEREFORE, Plaintiff Newman demands judgment in her favor against Defendants and actual damages of SEVENTY-FOUR THOUSAND, NINE HUNDRED NINETY-NINE DOLLARS ($74,999), including interest, costs, attorney's fees, and such other relief as the nature of the case may require.

Respectfully Submitted,

Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)


Kathleen P. Hyland
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)

*Attorneys for Plaintiff*

## REQUEST FOR A TRIAL BY JURY

Plaintiffs request a trial by jury of any claims that may be determined by a jury.

Dated: September 16, 2015

Kathleen P. Hyland